Ellyn S. Garofalo (SBN 158795)
Amir Kaltgrad (SBN 252399)
CARLTON FIELDS, LLP
2029 Century Park East, Suite 1200
Los Angeles, CA 90067-2913
Telephone: (310) 843-6300
Facsimile: (310) 843-6301
Email: EGarofalo@carltonfields.com
Email: AKaltgrad@carltonfields.com

Attorneys for Plaintiffs Yao Guo aka Vanessa Guo and Gosdom, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

YAO GUO aka VANESSA GUO, an individual; and GOSDOM, INC., a California corporation,

Plaintiffs,

vs.

KEVIN ROBL, an individual; REMINGTON CHASE aka WILLIAM CHASE aka WILLIAM WESTWOOD, an individual; CHRISTOPHER BREMBLE, an individual; BASE MEDIA TECHNOLOGY GROUP LIMITED, a Hong Kong corporation; PRODUCTION CAPITAL LLC, a Delaware limited liability company; PRODUCTION HOUSE INTERNATIONAL, LLC, a Wyoming limited liability company; JOHN BURGEE, an individual; ROBERT ABRAMOFF, an individual; BURGEE & ABRAMOFF, a California law corporation; and DOES 1-100, inclusive,

Defendants.

Case No.: 2:22-CV-05576-FWS-MAA

**PLAINTIFFS' OPPOSITION TO DEFENDANTS BURGEE & ABRAMOFF PROFESSIONAL CORPORATION, ROBERT ABRAMOFF AND JOHN BURGEE'S MOTION TO DISMISS THE THIRD, FOURTH AND EIGHTH CLAIMS FOR RELIEF**

Date: November 3, 2022
Time: 10:00 a.m.
Courtroom: 10D
411 W. 4TH Street
Santa Ana, CA 92701

# CONTENTS

PAGE


I. INTRODUCTION ..... 5

II. STANDARD ON A 12(B)(6) MOTION TO DISMISS. ..... 5

III. ALLEGATIONS IN THE COMPLAINT ..... 6

IV. THE COMPLAINT STATES FACTS SUFFICIENT TO ALLEGE A VIOLATION OF CALIFORNIA PENAL CODE § 496(c) BY THE LAWYER DEFENDANTS. ..... 8

V. THE COMPLAINT ALLEGES FACTS SUFFICIENT TO PLEAD A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST THE LAWYER DEFENDANTS. ..... 10

VI. THE COMPLAINT STATES FACTS SUFFICIENT TO ALLEGEE VIOLATIONS OF CALIFORNIA CORPORATIONS CODE §§ 25401 AND 25501 BY THE LAWYER DEFENDANTS ..... 12

VII. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Admiralty v. Jones* (9th Cir.1982)
677 F.2d 1289 ....................12

*Arpin v. Santa Clara Valley Transp., Agency*,
261 F. 3d 912 (9th Cir.2001) ....................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Carbajal v. HSBC Bank U.S.A., N.A.*,
No. CV169297PSGFFMX, 2017 WL 7806585 (C.D. Cal. Apr. 20, 2017) ....................9

*Gilligan v. Jamco Dev. Corp.*,
108 F. 3d 246 (9th Cir. 1997) ....................6

*Newman v. Universal Pictures*,
813 F. 2d 1519 (9th Cir.1987) ....................6

*Plaskett v. Wormuth*,
18 F. 4th 1072 (9th Cir. 2021) ....................6

*Whitaker v. Maher*,
No. CV1902154CJCGJSX, 2019 WL 4138653 (C.D. Cal. June 28, 2019) ....................9

**California Cases**

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
158 Cal. App. 4th 226 (2007) ....................12

*Crooks v. State Bar*,
3 Cal. 3d 346 (1970) ....................11

*McMillin v. Eare*,
70 Cal. App. 5th 893 (2021), *as modified* (Feb. 23, 2022) ....................11

*Simmons v. State Bar of California*,
70 Cal. 2d 361, 450 P.2d 291 (1969)....................11

*Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022) ........ 8, 9

*Small v. Fritz Companies, Inc*. 30 Cal. 4th 167 (2003) ........ 12

**Federal Statutes**

Fed. R. Civ. P. 8(a) ........ 5, 6

Fed. R. Civ. P. 12(b)(6), 8(e) ........ 5, 6

**California Statutes**

Cal. Corp. Code
- § 25008(a) ........ 13
- § 25401 ........ 12, 13
- § 25501 ........ 12
- § 25504.1 ........ 12, 13

Cal. Penal Code
- § 496(a) ........ 8, 9, 10
- § 496(c) ........ 5, 8, 9

**I. INTRODUCTION**

The Complaint details a massive $18 million Ponzi scheme that ensnared Plaintiffs Vanessa Guo and Gosdom, Inc. into raising short term bridge financing for film projects such as Lord of the West, Fast & Furious 9, Wally's Wonderland, Matrix 4 and The Mandalorian from their network of Chinese friends, family and clients. While the films were real, the alleged producers, Defendants Kevin Roble, Remington Chase and Chris Bremble were not and the proceeds from the investments and loans not used for production but were diverted to Roble, Chase and Bremble, or entities they controlled, for their own personal benefit.

The law firm of Burgee & Abramoff and its principals, John Burgee and Robert Abramoff (collectively, the "Lawyer Defendants") were the lawyers for the scheme. They not only drafted the fraudulent loan and investment agreements provided to the defrauded investors, but allowed Roble and Chase to use their client trust accounts to launder millions of dollars obtained from the victims.

Apparently the Lawyer Defendants see no problem with their drafting of documents that were the vehicle for the fraud or the washing of millions of dollars in investor monies through their client trust accounts. The Lawyer Defendants now contend that the detailed factual allegations in the Complaint fail to state plausible claims against them for violation of California Penal Code § 496(c), breach of fiduciary duty and aiding and abetting securities fraud. Defendants are, quite simply, wrong. As explained below, the Complaint is more than sufficient to plead the three causes of action stated against the Lawyer Defendants.

**II. STANDARD ON A 12(b)(6) MOTION TO DISMISS.**

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The

purpose of Rule 8(a)(2) is to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Dismissal under Rule 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Newman v. Universal Pictures*, 813 F. 2d 1519, 1521-22 (9th Cir.1987), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Accordingly, the Court must "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Arpin v. Santa Clara Valley Transp., Agency*, 261 F. 3d 912, 923 (9th Cir.2001) (citation omitted). To survive a motion to dismiss for failure to state a claim, the complaint must "contain[] enough facts to 'state a claim to relief that is plausible on its face.' " *Plaskett v. Wormuth*, 18 F. 4th 1072, 1083 (9th Cir. 2021), quoting *Hebbe v. Pliler*, 627 F. 3d 338, 341–342 (9th Cir. 2010).

The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *See, e.g., Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

**III. ALLEGATIONS IN THE COMPLAINT**

The Complaint details an elaborate multi-year Ponzi scheme orchestrated by Defendants Roble, Remington Chase and Chris Bremble, Defendant Base Media's principal. Roble and Chase touted themselves as successful film producers, with a slate of films under production including Lord of the West, Fast & Furious 9, Wally's Wonderland, Matrix 4 and The Mandalorian. While the films were, in fact, under production, it was not by Roble, Chase and Bremble.

The scheme operated as follows. Roble and Chase first solicited Plaintiff Vanessa Guo to exploit her large network of Chinese friends and family for investments or loans to be applied as short term bridge financing for film projects.

Comp., ¶ 35. Guo, completely duped by Roble and Chase, ultimately raised approximately $18 million in loans and investment. *Id*., ¶ 5, 81. Guo was instructed to organize Plaintiff Godsom, Inc. as the principal in the investment transactions. *Id*., ¶ 34. In this way, the conspirators attempted to insulate themselves from direct liability to the investors – leaving Guo and Gosdom on the hook for millions of dollars lost to the Ponzi schemers. *Id*., ¶ 69.

For each investment or loan, the victims were provided with a loan or investment agreement which set forth the terms of repayment and identified the specific film destined to receive the funds. Comp., ¶ 53. The agreements setting forth the terms and use of the funds were drafted by the Lawyer Defendants. *Id*., ¶ 54. For instance, on January 28, 2019, the Burgee firm sent an "Investment Agreement" between Base Media and Jonathan Chu, an investor introduced by Gosdom. *Id*., ¶ 62(a). And, on January 28, 2019, the Burgee firm sent "Investment Agreements" between Base Media and Zhihui Weng, an investor introduced by Gosdom, and her son, Yao Chang Chen. *Id*., ¶ 62(b).

In a number of instances, the lenders/investors were directed to wire their funds directly into the Lawyer Defendants' client trust account from which they purportedly would be transferred to the specified production. Comp., ¶¶ 59, 105. The use of "trust" accounts controlled by lawyers gave the investments the aura of legitimacy and security and, in fact, Plaintiffs and the other victims were told that their funds were be safe in trust accounts overseen by the Lawyer Defendants. *Id*. For instance, Chase told Guo that the law firm was collecting funds for Base because the firm represented Base Media and was drafting the relevant agreements. *Id*., ¶¶ 58, 59. In one instance, Chase texted Guo that "the law firm that will be collecting all of the funds for the production of Wally's Wonderland. This law firm will be receiving and dispersing the funds to the production companies to secure the rebates and tax credits that we've discussed." *Id*., ¶ 58, 59.

Unbeknownst to Plaintiffs, Burgee & Abramoff and its trust account were being used as a conduit for the Ponzi Defendants' fraud, and the funds deposited into its trust account were promptly whisked away by the conspirators. Comp., ¶¶ 7, 58, 59. Between 2018 and 2019, at Defendants' instruction, no less than $3.125 million in loan/investment proceeds were wired to the Burgee & Abramoff client trust account. *Id*., ¶ 59. The Lawyer Defendants would have this Court believe that they failed to notice that something was awry as millions of dollars were being laundered through their accounts. Yet, the Lawyer Defendants made no effort to stop Defendants from siphoning off these funds or to confirm that the funds were being applied as represented in the underlying loan agreements which they drafted. *Id*., ¶¶ 64-67.

In short, the Lawyer Defendants drafted the agreements used to obtain funds from defrauded investors and allowed the schemers to hijack their client trust account to steal and launder the funds deposited by the unsuspecting Plaintiffs and other victims.

The crux of the Lawyer Defendants' motion to dismiss is that they had no "roll" (sic) in soliciting funds from Plaintiffs or their investors and were not in privity with the Plaintiffs or other defrauded parties. Motion to Dismiss, 5:17-20, 6:9-10, 19-20. These allegations, however, are irrelevant to the survival of the claims asserted against the Lawyer Defendants.

## IV. THE COMPLAINT STATES FACTS SUFFICIENT TO ALLEGE A VIOLATION OF CALIFORNIA PENAL CODE § 496(c) BY THE LAWYER DEFENDANTS.

Plaintiffs' Third Claim for Relief alleges a violation of California Penal Code § 496(c) which creates a private right of action for a violation of Penal Code § 496(a). Relying solely on the recent *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361 (2022), Plaintiff contends that Plaintiffs were required but failed to establish that "Movants intentionally engaged in an act that is a crime" or knew

that a crime was being committed. *Siry* does not advance the Lawyer Defendants' cause.

At the outset, *Siry* involved a judgment after trial. Thus, the issue was whether the plaintiffs established intent to commit or knowledge of a crime at trial. *Siry* does not address the pleading standard for knowledge and intent -- issues of fact that cannot be determined on a motion to dismiss. *Whitaker v. Maher*, No. CV1902154CJCGJSX, 2019 WL 4138653, at *2 (C.D. Cal. June 28, 2019); *Carbajal v. HSBC Bank U.S.A., N.A.*, No. CV169297PSGFFMX, 2017 WL 7806585, at *11 (C.D. Cal. Apr. 20, 2017). Most importantly, the California Supreme Court's holding in *Siry* validates Plaintiffs' Third Claim for Relief.

Penal Code § 496(a) provides, in pertinent part, that:

> (a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.

The *Siry* Court held that Section 496(a) applied to the fraudulent diversion of partnership funds because the defendants:

> " ' receive[d]" "property" (the diverted partnership funds) belonging to plaintiff, having "obtained" the diverted funds "in [a] manner constituting theft." (Citation) Defendants also conceal[ed]" or "withh[e]ld[ ]" those funds (and/or aided in concealing or withholding them) from plaintiff. (Citation.) They did all of this "knowing" the diverted funds were "so ... obtained.' "

*Siry.*, *supra*, 13 Cal. 5th at 361.

Since the *Siry* defendants' violation of section 496(a) caused plaintiff to suffer actual damage, loss, or harm, the plaintiff was qualified under section 496(c) as a "person who has been injured by a violation of subdivision (a)", entitled to bring an action under that section 496(c). *Id*. at 361, *citing Switzer v. Wood*, 35 Cal. App. 5th 116, 127–128 (2019).

Here, the Complaint alleges that the Enterprise Defendants stole money from Plaintiffs and their defrauded investors (¶ 104), at least $3.125 million in stolen funds was deposited by the investors (at Defendants' instruction) into the Lawyer Defendants' client trust account (¶ 59) and the stolen funds were unlawfully diverted from the Lawyer Defendants' trust account to the other Defendants for purposes other than those stated in the agreements drafted by the Lawyer Defendants (¶ 105).

The Complaint alleges that the Lawyer Defendants knew that the funds were stolen and being diverted. Comp., ¶ 106. And, of course, since the Lawyer Defendants drafted the agreements, they knew how the funds were to be applied. Nevertheless, they allowed the funds to be diverted to other recipients. Comp., ¶¶ 105, 106. Thus, the allegations are more than sufficient to show knowledge and the intent to transfer the funds – which was done by the Lawyer Defendants who controlled their own accounts. Are the Lawyer Defendants seriously suggesting that they did not know what was in the agreements they drafted or the recipients of funds transferred from the accounts they controlled? Did they seriously fail to take any precautions or even inquire why millions of dollars were being washed their client trust account? Any such allegations are implausible and theft, fraud and money laundering are federal and state crimes, sufficient to trigger liability under Penal Code § 496(a).

## V. THE COMPLAINT ALLEGES FACTS SUFFICIENT TO PLEAD A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST THE LAWYER DEFENDANTS.

The Lawyer Defendants contend that (1) the allegation that Plaintiffs funds were placed in their trust account is insufficient to plead a fiduciary obligation owed by the Lawyer Defendants to Plaintiffs, absent an agreement between the Lawyer Defendants and Plaintiffs; (2) the Lawyer Defendants had a duty to disburse the funds as directed by their client; and (3) the Complaint fails to plead that the Lawyer Defendants knew of any restrictions on the transfer of the funds.

First and foremost, the Lawyer Defendants misstate the law. Contrary to the Lawyer Defendants' claim, the general rule is that "one who receives the money of another to invest on that person's behalf becomes a fiduciary." *McMillin v. Eare*, 70 Cal. App. 5th 893, 912 (2021), *as modified* (Feb. 23, 2022). Specifically, with respect to an attorney:

> 'When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. * * * 'When an attorney assumes a fiduciary relationship and violates his duty in a manner that would justify disciplinary action if the relationship had been that of attorney and client, he may properly be disciplined for his misconduct.'"

*Crooks v. State Bar*, 3 Cal. 3d 346, 355 (1970); s*ee, also, Simmons v. State Bar of California*, 70 Cal. 2d 361, 365, 450 P.2d 291, 293–94 (1969), *quoting Johnstone v. State Bar*, 64 Cal. 2d 153, 155–56 (1966) ("When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. Thus the funds in his possession are impressed with a trust, and his conversion of such funds is a breach of the trust.")

Second, while an attorney may have an obligation to follow his client's direction, an attorney's obligation does not extend to unlawful or fraudulent conduct. Typically, funds in a client trust account belong to a client, whether deposited by received for payment to the client as in the case of settlement funds. . Here, the funds were entrusted to the Lawyer Defendants by third parties, for transfer to film productions as short term financing. Since the Lawyer Defendants drafted the investment and loan agreements, they knew the purpose of the deposits. Given these highly unusual circumstances, and a lawyer's ethical obligations not to assist in a client's fraud, the Lawyer Defendants' claim that they were obligated to follow their clients' instructions to transfer the third party funds falls flat.

Finally, in a similar vein, and as elaborated in Section IV, above, the Lawyer Defendants' feigned ignorance is contrary to the facts pleaded in the Complaint, namely, that they drafted the agreements and apparently failed to question why

their trust account was being used to move millions of dollars in third party. Willful blindness is not a defense and, in any event, the Complaint pleads facts adequate to establish the Lawyer Defendants' knowledge that the use of the funds was restricted to financing of specific film projects.

## VI. THE COMPLAINT STATES FACTS SUFFICIENT TO ALLEGEE VIOLATIONS OF CALIFORNIA CORPORATIONS CODE §§ 25401 and 25501 BY THE LAWYER DEFENDANTS

Corporations Code § 25401 makes it unlawful "for any person to offer or sell a security in this state" by means of untrue statements or omissions of material fact. Corporations Code § 25501 creates a private right of action for violations of Section 25401 by permitting any person damaged by a violation of Section 25401 to "sue either for rescission or for damages ..." *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 249–58, 70 (2007).

Plaintiff is correct that a direct violation of Corporations Code section 25401 requires privity between the seller and purchaser of securities. *Id*., citing *California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (2002) (§ 25501 "retain[s] the privity requirement from common law fraud"); *Admiralty v. Jones* (9th Cir.1982) 677 F.2d 1289, 1296 (affirming dismissal of Section 25401 claim because "liability was limited to actual sellers" and seller's attorney "was not the literal seller, as required by this section").

However, Corporations Code § 25504.1 imposes joint and several liability on any person who materially assists a primary violator with the intent to deceive or defraud. Securities fraud must be pleaded with the same specificity as common law fraud. *Small v. Fritz Companies, Inc*. 30 Cal. 4th 167, 173–174 (2003), *quoting Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Merely "play[ing] an active role in the offering of a security does not suffice for liability under 25504 which requires the pleading of an intent to defraud, which means an intent "to induce reliance on the knowing misrepresentation or omission." *Ibid*.

The Complaint states facts sufficient to plead aider and abettor liability for a primary violation of Corporations Code § 25504.1. First, the Complaint alleges that Chase and Roble sold loan and equity opportunities to Gosdom which were securities as that term is defined by California Corporations Code § 25008(a). The Complaint alleges facts sufficient to plead that the Chase and Roble made false and misleading representations in connection with the sale of those securities.

And, the Complaint states facts sufficient to plead aider and abettor liability under Section 25401.1 against the Lawyer Defendants. The Complaint alleges that the Lawyer Defendants knowingly drafted the loan and investment agreements that facilitated the fraud, the agreement drafted by Defendants misrepresented the contemplated use of the funds and the Defendants received the purchase funds into their trust account and diverted those funds to purposes other than those delineated in the agreements they drafted. *See, e.g.*, Comp., ¶¶ 59, 105, 106. These facts are more than sufficient to plead aider and abettor liability under Corporations Code § 25504.1.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order denying the Lawyer Defendants' Motion to Dismiss in its entirety or, if the court deems it necessary, an order permitting Plaintiffs to amend any claim for relief on which the Court grants the Motion.

Dated: October 13, 2022

CARLTON FIELDS, LLP
By: /s/ Ellyn S. Garofalo
Ellyn S. Garofalo
Amir Kaltgrad
Attorneys for Plaintiffs Yao Guo aka Vanessa Guo and Gosdom, Inc.