Christopher D. Lee (SBN: 310042)
L.A. COMMERCIAL ATTORNEY, A PROF. LAW CORP.
9660 Flair Dr., Ste 438,
El Monte, CA 91731
Telephone: (626)782-7383
Facsimile: (626)782-7342
Email:Christopher@lacommerciallaw.com

Attorneys for Plaintiffs VANESSA GUO and GOSDOM, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAO GUO aka VANESSA GUO, an individual; and GOSDOM, INC., a California corporation,<br><br>          Plaintiffs,<br><br>          vs.<br><br>KEVIN ROBL, an individual; REMINGTON CHASE aka WILLIAM CHASE aka WILLIAM WESTWOOD, an individual; CHRISTOPHER BREMBLE, an individual; BASE MEDIA TECHNOLOGY GROUP LIMITED, a Hong Kong corporation; PRODUCTION CAPITAL LLC, a Delaware limited liability company; PRODUCTION HOUSE INTERNATIONAL, LLC, a Wyoming limited liability company; JOHN BURGEE, an individual; ROBERT ABRAMOFF, an individual; BURGEE & ABRAMOFF, a California law corporation; and DOES 1-100, inclusive,<br><br>          Defendants. | Case No. 2:22-cv-05576-FWS-MAA<br><br>Honorable Fred W. Slaughter, Judge Presiding<br><br>**SUPPLEMENTAL DECLARATION OF PLAINTIFF VASSESA GUO IN SUPPORT OF PLAINTIFFS' MOTION TO ENTER DEFAULT JUDGMENT**<br><br>Date:    5/8/2025<br>Time:    10:00AM<br>Courtroom:    10D-Reagan Federal Building 411 W. 4th Street, Santa Ana, California 92701 |

## SUPPLEMENTAL DECLARATION OF VANESSA GUO

I, VANESSA GUO, declare as follows:

1.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe that they are true. If called as a witness, I could and would competently testify to the matters stated.

2.  I am the authorized representative of Plaintiff GOSDOM, INC. ("GOSDOM"). I make this supplemental declaration in support of Plaintiffs YAO GUO aka VANESSA GUO and GOSDOM, INC.'s renewed Motion for Default Judgment against Defendants KEVIN ROBL, PRODUCTION CAPITAL LLC ("PRODUCTION CAPITAL"), and PRODUCTION HOUSE INTERNATIONAL, LLC (the "Defaulted Defendants") and in response to the Court's April 28, 2025 Minute Order (Dkt. 77), requesting supplemental briefing regarding Plaintiffs' breach of contract claim against PRODUCTION CAPITAL.

3.  GOSDOM entered into several loan and security & investment agreements with Production Capital to provide purported short-term production financing for film projects. These agreements were all prepared and executed by Defendant KEVIN ROBL for PRODUCTION CAPITAL, and the funds were transferred to the designated entities and designated bank accounts. True and correct copies of the agreements entered into by GOSDOM and PRODUCTION CAPITAL are attached hereto as Exhibits 1-5, which are:

> i. A Security & Investment Agreement dated November 30, 2018, in the amount of **$460,000**. *(Exhibit 1)*
>
> ii. A Security & Investment Agreement dated January 7, 2019, in the amount of **$700,000**. *(Exhibit 2)*
>
> iii. A Security & Investment Agreement dated July 8, 2019, in the amount of **$500,000**. *(Exhibit 3)*

**SUPPLEMENTAL DECLARATION OF VANESSA GUO IN SUPPORT OF PLAINTIFFS' MOTION TO ENTER DEFAULT JUDGMENT**

iv. A Loan Agreement dated August 1, 2019, in the principal amount of
**$640,000**. *(Exhibit 4)*

v. A Loan Agreement dated September 23, 2019, in the principal amount of
$**560,000**. (*Exhibit 5*)

4.    Each of the agreements followed a similar pattern: capital advances were made by or through GOSDOM with a corresponding obligation on Defendants' part to repay principal and interest, which are all secured by a *purported* colleterial defined as "a continuing security interest [] in and to all of [PRODUCTION CAPITAL's] right, title and interest, whether now owned or hereafter acquired[] in and to the story, the Screenplay[] and any other literary, musical, dramatic or other literary material of any kind or nature upon which, in whole or in part, the Picture is or may be based, or from which it is or may be adapted or inspired or which may be or has been used or included in the Picture including, without limitation, all scripts, scenarios, screenplays, bibles, stories, treatments, novels, outlines, books, titles, concepts, manuscripts or other properties or materials of any kind or nature in whatever state of completion and all drafts, versions and variations thereof."

5.    Plaintiff GOSDOM has fully performed the contractual obligations under the above-referenced loan and investment agreements by making all required payments in accordance with the agreed terms in the total combined total loan amount of $2,860,000. To date, none of the principal amount under the said agreements has been returned by PRODUCTION CAPITAL.

6.    Thus, Plaintiffs respectfully request the Court grant default judgment on the breach of contract claim against Defendant PRODUCTION CAPITAL LLC in the amount of $2,860,000, plus post-judgment interest as permitted by law.

**SUPPLEMENTAL DECLARATION OF VANESSA GUO IN SUPPORT OF PLAINTIFFS' MOTION TO ENTER DEFAULT JUDGMENT**

1    I declare under penalty of perjury under the laws of United States that the
2    foregoing is true and correct and based on my personal knowledge.
3
4    Dated:  May 16, 2025
5                                                  /s/Vanessa Guo
                                                   VANESSA GUO
6
7
8
9
10
11
12
13
14
15
16
17

19
20
21
22
23
24

-4-

# Exhibit 1

SECURITY & INVESTMENT AGREEMENT

THIS SECURITY & INVESTMENT AGREEMENT (as it may from time to time be amended, supplemented, modified or restated, the (**"Agreement"**) is dated as of November 30, 2018 between Production Capital (**"Company"**), on one hand, and Gosdom Inc.. (**"Investor"**), on the other hand.

RECITALS

**Investment**.  On or before November 30, 2018 Investor agrees to advance the sum of Four Hundred and Sixty Thousand US Dollars (US $460,000) ("Advance") to Company to be used for the payment of certain obligations in connection with that certain motion picture project related to The Bridge Finance Between Film Finances Inc. and Bily Media Berlin GmbH and the Film "Berlin I Love You".

**Obligation**.  As an inducement to Investor to contribute the Advance, Company desires to secure the repayment of the Advance either via cash or, if Investor desires to be an equity investor in the Picture, via the application of the Advance against Investor's total equity investment.

NOW, THEREFORE, for valuable consideration, the receipt, adequacy and legal sufficiency of which Company hereby acknowledges, Company hereby agrees with Investor for its benefit as follows:

AGREEMENT

1.     **Repayment/Premium**.  The Advance shall be repaid to the Investor together with a premium thereon in an amount equal to Twenty Five Percent (25.0%) of the Advance ("Premium", and, together with the Advance, the "Secured Obligations), on or before January 15, 2019.

2.     **Grant of Security Interest.**  As security for the full payment and performance of the Secured Obligations, Company hereby grants to Investor a continuing security interest (the "Security Interest"), in and to all of Company's right, title and interest, whether now owned or hereafter acquired (including, without limitation, copyrights) in and to the story, the Screenplay (including any and all drafts, versions and variations of such screenplay) and any other literary, musical, dramatic or other literary material of any kind or nature upon which, in whole or in part, the Picture is or may be based, or from which it is or may be adapted or inspired or which may be or has been used or included in the Picture including, without limitation, all scripts, scenarios, screenplays, bibles, stories, treatments, novels, outlines, books, titles, concepts, manuscripts or other properties or materials of any kind or nature in whatever state of completion and all drafts, versions and variations thereof (the "Literary Property") (the "Collateral").

3.     **Continuing Assignment and Security Interest; Termination**.  This Agreement shall create a continuing assignment of and security interest in all of the Collateral, and shall remain in full force and effect until the date of repayment of the Secured Obligations to Investor, (the "Termination Date").  Upon the occurrence of the Termination Date, the Security Interest in all the Collateral shall terminate automatically with no further action necessary.

4.     **Rights of Investor**.  Subject at all times to the priority liens of the bank or other institutional lender providing production financing, including, without limitation, bridge loans for the Picture (the "Lender"), the completion guarantor, and the guilds (SAG-AFTRA, DGA and WGA, if and as applicable), as customary in the industry (the "Permitted Liens"), Investor may only resort to its security interest in the Collateral hereunder if Company fails to satisfy any of its obligations under this Agreement, or to repay the Secured Obligations.  In addition to any and all legal and equitable remedies it may have under applicable law, Investor shall have all rights and remedies of a "Investor" under the Uniform Commercial Code (as it may be amended from time to time), including without limitation, the filing of a customary UCC-1 financing statement to perfect such interest.

- All of the benefits and terms granted by Company herein are at least as favorable as the benefits and terms granted by Company to any previous Investor. Should Company enter into any subsequent agreement with any other Investor which provides for benefits or terms more favorable than those contained in this Agreement, then this Agreement shall be deemed to be modified to provide Investor with those more favorable benefits and terms. Company shall notify Investor promptly of the existence of such more favorable benefits and terms and Investor shall have the right to receive the more favorable benefits and terms immediately. If requested in writing by the Investor, Company shall amend this Agreement to contain the more favorable terms and conditions.

5.    **Representations and Warranties of Company**.    Company hereby represents and warrants to Investor as follows: (a) Company is duly authorized to enter into this Agreement, to grant the rights herein granted and to perform all its obligations hereunder; (b) this Agreement constitutes the legal, valid and binding agreement and obligation of Company, enforceable against Company in accordance with its terms; (c) except with respect to Permitted Liens, Company has not done and will not do any act, and have not made and will not make any grant, assignment or agreement, which will or might conflict or interfere with the complete enjoyment of all of Investor's rights hereunder; (d) Company is the sole and exclusive owner of all right, title and interest in and to the Collateral and has good and marketable title to all and every part of the Collateral, free and clear of any liens, claims, threatened claims or encumbrances, except for Permitted Liens; and (e) Company shall not transfer or assign the Collateral or any portion thereof to any third party (other than to distributors in the ordinary course of business and as necessary or required by the Lender, completion guarantor and/or guilds in connection with the Permitted Liens) or grant a security interest in or otherwise create any lien or encumbrance upon the Collateral without Investor's prior written consent in each instance.

6.    **Indemnification**.    Company shall indemnify and hold harmless Investor from and against any and all third party claims, damages, liabilities, costs and/or expenses (including, without limitation, attorneys' fees and expenses) arising as a result of any breach by Company of any of its representations, warranties or agreements hereunder.

7.    **Other.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of California without giving effect to any conflict of law provision. The parties hereby irrevocably submit to the sole and exclusive jurisdiction of the federal, state and local courts located in the State of California if any dispute arises under this Agreement.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, such provision shall be enforced to the maximum extent permitted by law and the remaining provisions shall remain in full force and effect.  No termination, waiver, modification or amendment to this Agreement shall be binding unless in writing and signed by the parties hereto.  The failure of either party to take action as a result of a breach of this Agreement by the other party shall constitute neither a waiver of the particular breach involved nor a waiver of either party's right to enforce any provision of this Agreement through any remedy granted by law or this Agreement.  This Agreement may be executed and delivered in counterparts, by facsimile or PDF e-mail, each of which shall be deemed to be an enforceable original and all of which together shall constitute one enforceable instrument.

2

IN WITNESS WHEREOF, Company and Investor have duly executed and delivered this Agreement as of the date first above written.

**INVESTOR:**                                                    **COMPANY:**
GOSDOM INC.                                                      PRODUCTION CAPITAL ENTERTAINMENT

_____                                          _____
Yao Guo                                                          **KEVIN ROBL**

3

# Exhibit 2

## SECURITY & INVESTMENT AGREEMENT

THIS SECURITY & INVESTMENT AGREEMENT (as it may from time to time be amended, supplemented, modified or restated, the (**"Agreement"**) is dated as of January 7, 2019 between Production Capital (**"Company"**), on one hand, and Gosdom Inc.. (**"Investor"**), on the other hand.

### RECITALS

**Investment**.  On or before January 7, 2019 Investor agrees to advance the sum of Seven Hundred Thousand US Dollars (US $700,000) ("Advance") to Company to be used for the payment of certain obligations in connection with that certain motion picture project related to Bad Boys for Life, Directed by Adil El Arbi and Cast includes Will Smith and Vanessa Hudgens.

**Obligation**.  As an inducement to Investor to contribute the Advance, Company desires to secure the repayment of the Advance either via cash or, if Investor desires to be an equity investor in the Picture, via the application of the Advance against Investor's total equity investment.

NOW, THEREFORE, for valuable consideration, the receipt, adequacy and legal sufficiency of which Company hereby acknowledges, Company hereby agrees with Investor for its benefit as follows:

### AGREEMENT

1.       **Repayment/Premium.**  The Advance shall be repaid to the Investor together with a premium thereon in an amount equal to Ten Percent (10.0%) of the Advance ("Premium", and, together with the Advance, the "Secured Obligations"), on or before January 31, 2019.

2.       **Grant of Security Interest.**  As security for the full payment and performance of the Secured Obligations, Company hereby grants to Investor a continuing security interest (the "Security Interest"), in and to all of Company's right, title and interest, whether now owned or hereafter acquired (including, without limitation, copyrights) in and to the story, the Screenplay (including any and all drafts, versions and variations of such screenplay) and any other literary, musical, dramatic or other literary material of any kind or nature upon which, in whole or in part, the Picture is or may be based, or from which it is or may be adapted or inspired or which may be or has been used or included in the Picture including, without limitation, all scripts, scenarios, screenplays, bibles, stories, treatments, novels, outlines, books, titles, concepts, manuscripts or other properties or materials of any kind or nature in whatever state of completion and all drafts, versions and variations thereof (the "Literary Property") (the "Collateral").

3.       **Continuing Assignment and Security Interest; Termination**.  This Agreement shall create a continuing assignment of and security interest in all of the Collateral, and shall remain in full force and effect until the date of repayment of the Secured Obligations to Investor, (the "Termination Date").  Upon the occurrence of the Termination Date, the Security Interest in all the Collateral shall terminate automatically with no further action necessary.

4.       **Rights of Investor**.  Subject at all times to the priority liens of the bank or other institutional lender providing production financing, including, without limitation, bridge loans for the Picture (the "Lender"), the completion guarantor, and the guilds (SAG-AFTRA, DGA and WGA, if and as applicable), as customary in the industry (the "Permitted Liens"), Investor may only resort to its security interest in the Collateral hereunder if Company fails to satisfy any of its obligations under this Agreement, or to repay the Secured Obligations.  In addition to any and all legal and equitable remedies it may have under applicable law, Investor shall have all rights and remedies of a "Investor" under the Uniform Commercial Code (as it may be amended from time to time), including without limitation, the filing of a customary UCC-1 financing statement to perfect such interest.

- All of the benefits and terms granted by Company herein are at least as favorable as the benefits and terms granted by Company to any previous Investor. Should Company enter into any subsequent agreement with any other Investor which provides for benefits or terms more favorable than those contained in this Agreement, then this Agreement shall be deemed to be modified to provide Investor with those more favorable benefits and terms. Company shall notify Investor promptly of the existence of such more favorable benefits and terms and Investor shall have the right to receive the more favorable benefits and terms immediately. If requested in writing by the Investor, Company shall amend this Agreement to contain the more favorable terms and conditions.

5.    **Representations and Warranties of Company**.  Company hereby represents and warrants to Investor as follows: (a) Company is duly authorized to enter into this Agreement, to grant the rights herein granted and to perform all its obligations hereunder; (b) this Agreement constitutes the legal, valid and binding agreement and obligation of Company, enforceable against Company in accordance with its terms; (c) except with respect to Permitted Liens, Company has not done and will not do any act, and have not made and will not make any grant, assignment or agreement, which will or might conflict or interfere with the complete enjoyment of all of Investor's rights hereunder; (d) Company is the sole and exclusive owner of all right, title and interest in and to the Collateral and has good and marketable title to all and every part of the Collateral, free and clear of any liens, claims, threatened claims or encumbrances, except for Permitted Liens; and (e) Company shall not transfer or assign the Collateral or any portion thereof to any third party (other than to distributors in the ordinary course of business and as necessary or required by the Lender, completion guarantor and/or guilds in connection with the Permitted Liens) or grant a security interest in or otherwise create any lien or encumbrance upon the Collateral without Investor's prior written consent in each instance.

6.    **Indemnification**.  Company shall indemnify and hold harmless Investor from and against any and all third party claims, damages, liabilities, costs and/or expenses (including, without limitation, attorneys' fees and expenses) arising as a result of any breach by Company of any of its representations, warranties or agreements hereunder.

7.    **Other.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of California without giving effect to any conflict of law provision.  The parties hereby irrevocably submit to the sole and exclusive jurisdiction of the federal, state and local courts located in the State of California if any dispute arises under this Agreement.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, such provision shall be enforced to the maximum extent permitted by law and the remaining provisions shall remain in full force and effect.  No termination, waiver, modification or amendment to this Agreement shall be binding unless in writing and signed by the parties hereto.  The failure of either party to take action as a result of a breach of this Agreement by the other party shall constitute neither a waiver of the particular breach involved nor a waiver of either party's right to enforce any provision of this Agreement through any remedy granted by law or this Agreement.  This Agreement may be executed and delivered in counterparts, by facsimile or PDF e-mail, each of which shall be deemed to be an enforceable original and all of which together shall constitute one enforceable instrument.

IN WITNESS WHEREOF, Company and Investor have duly executed and delivered this Agreement as of the date first above written.


**INVESTOR:**
GOSDOM INC.

_____
Yao Guo

**COMPANY:**
PRODUCTION CAPITAL ENTERTAINMENT

_____
**KEVIN ROBL**

3

# Exhibit 3

SECURITY & INVESTMENT AGREEMENT

THIS SECURITY & INVESTMENT AGREEMENT (as it may from time to time be amended, supplemented, modified or restated, the ("**Agreement**") is dated as of July 8th, 2019 between **Production Capital LLC** ("**Borrower**"), on one hand, and **Gosdom Inc.** ("**Investor**"), on the other hand.

RECITALS

**Investment**. On or before July 8th, 2019 (Date) Investor agrees to advance the sum of Five Hundred Thousand (500,000 USD) ("Advance") to Company via combination of wire transfer to be used for the payment of certain obligations in connection with that certain motion picture project provisionally entitled "Lord of the West" (the "Picture").

**Obligation**. As an inducement to Investor to contribute the Advance, Company desires to secure the repayment of the Advance either via cash or, if Investor desires to be an equity investor in the Picture, via the application of the Advance against Investor's total equity investment.

NOW, THEREFORE, for valuable consideration, the receipt, adequacy and legal sufficiency of which Company hereby acknowledges, Company hereby agrees with Investor for its benefit as follows:

AGREEMENT

1. **Repayment/Premium**.  The Advance shall be repaid to the Investor together with a premium thereon in an amount equal to Twenty **Percent (20%)** of the Advance ("Premium", and, together with the Advance, the "Secured Obligations"), on or before **October 7th, 2019** .

2. **Grant of Security Interest.**  As security for the full payment and performance of the Secured Obligations, Company hereby grants to Investor a continuing security interest (the "Security Interest"), in and to all of Company's right, title and interest, whether now owned or hereafter acquired (including, without limitation, copyrights) in and to the story, the Screenplay (including any and all drafts, versions and variations of such screenplay) and any other literary, musical, dramatic or other literary material of any kind or nature upon which, in whole or in part, the Picture is or may be based, or from which it is or may be adapted or inspired or which may be or has been used or included in the Picture including, without limitation, all scripts, scenarios, screenplays, bibles, stories, treatments, novels, outlines, books, titles, concepts, manuscripts or other properties or materials of any kind or nature in whatever state of completion and all drafts, versions and variations thereof (the "Literary Property") (the "Collateral").

3. **Continuing Assignment and Security Interest; Termination**.  This Agreement shall create a continuing assignment of and security interest in all of the Collateral, and shall remain in full force and effect until the date on which the first to occur of (i) repayment of the Secured Obligations to Investor from the budget of the Picture, or (ii) conclusion of financing for the Picture wherein Investor is an equity investor and the Secured Obligations (or any portion thereof not repaid in cash per I.(i) above), at Investor's election, have been deemed to be applied against the agreed upon equity investment (the "Termination Date").  Upon the occurrence of the Termination Date, the Security Interest in all the Collateral shall terminate automatically with no further action necessary.

1

4.  **Rights of Investor**.   Subject at all times to the priority liens of the bank or other institutional lender providing production financing, including, without limitation, bridge loans for the Picture (the "Lender"), the completion guarantor, and the guilds (SAG-AFTRA, DGA and WGA, if and as applicable), as customary in the industry (the "Permitted Liens"), Investor may only resort to its security interest in the Collateral hereunder if Company fails to satisfy any of its obligations under this Agreement, or to repay the Secured Obligations or apply such Secured Obligations (or the unpaid remaining portion thereof) to Investor's equity investment, on or before ten (10) business days following commencement of principal photography of the Picture.  In addition to any and all legal and equitable remedies it may have under applicable law, Investor shall have all rights and remedies of a "Investor" under the Uniform Commercial Code (as it may be amended from time to time), including without limitation, the filing of a customary UCC-1 financing statement to perfect such interest.

•   All of the benefits and terms granted by Company herein are at least as favorable as the benefits and terms granted by Company to any previous Investor. Should Company enter into any subsequent agreement with any other Investor which provides for benefits or terms more favorable than those contained in this Agreement, then this Agreement shall be deemed to be modified to provide Investor with those more favourable benefits and terms. Company shall notify Investor promptly of the existence of such more favorable benefits and terms and Investor shall have the right to receive the more favorable benefits and terms immediately. If requested in writing by the Investor, Company shall amend this Agreement to contain the more favourable terms and conditions.

5.  **Representations and Warranties of Company**.   Company hereby represents and warrants to Investor as follows: (a) Company is duly authorized to enter into this Agreement, to grant the rights herein granted and to perform all its obligations hereunder; (b) this Agreement constitutes the legal, valid and binding agreement and obligation of Company, enforceable against Company in accordance with its terms; (c) except with respect to Permitted Liens, Company has not done and will not do any act, and have not made and will not make any grant, assignment or agreement, which will or might conflict or interfere with the complete enjoyment of all of Investor's rights hereunder; (d) Company is the sole and exclusive owner of all right, title and interest in and to the Collateral and has good and marketable title to all and every part of the Collateral, free and clear of any liens, claims, threatened claims or encumbrances, except for Permitted Liens; and (e) Company shall not transfer or assign the Collateral or any portion thereof to any third party (other than to distributors in the ordinary course of business and as necessary or required by the Lender, completion guarantor and/or guilds in connection with the Permitted Liens) or grant a security interest in or otherwise create any lien or encumbrance upon the Collateral without Investor's prior written consent in each instance.

6.  **Indemnification**.   Company shall indemnify and hold harmless Investor from and against any and all third-party claims, damages, liabilities, costs and/or expenses (including, without limitation, attorneys' fees and expenses) arising as a result of any breach by Company of any of its representations, warranties and agreements hereunder.

7.  **Power of Attorney**.   From the date of execution hereof, through the Termination Date, Company irrevocably hereby appoints the Investor as Company's attorney-in-fact with full authority in the place and stead of Company and in the name of Company to execute any instrument which the Investor may deem necessary or advisable to accomplish the purposes of this Agreement. Company acknowledges that the foregoing grant of power of attorney is a power coupled with an interest and is irrevocable.  On and after the Termination Date, Investor irrevocably hereby appoints the Company as Investor's attorney-in-fact with full authority in the place and stead of Investor and in the name of Investor to execute any instrument which the Company may deem necessary or advisable to accomplish the termination and removal of any lien or other rights granted to Investor pursuant to this Agreement. Investor acknowledges that the foregoing grant of power of attorney is a power coupled with an interest and is irrevocable

8.  **Other.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the Republic of China without giving effect to any conflict of law provision.  The parties hereby irrevocably submit to the sole and exclusive jurisdiction of the courts located in the Republic of China if any dispute arises under this Agreement.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, such provision shall be enforced to the maximum extent permitted by law and the

remaining provisions shall remain in full force and effect. No termination, waiver, modification or amendment to this Agreement shall be binding unless in writing and signed by the parties hereto. The failure of either party to take action as a result of a breach of this Agreement by the other party shall constitute neither a waiver of the particular breach involved nor a waiver of either party's right to enforce any provision of this Agreement through any remedy granted by law or this Agreement. This Agreement may be executed and delivered in counterparts, by facsimile or PDF e-mail, each of which shall be deemed to be an enforceable original and all of which together shall constitute one enforceable instrument.

Investor will remit the Investment to Production Company at the following bank account:

| | |
|---|---|
| Account Name: | Production Capital LLC |
| Bank: | Chase Bank |
| | |
| Account No. | 206179373 |
| SWIFT code: | CHASUS33 |

IN WITNESS WHEREOF, Company and Investor have duly executed and delivered this Agreement as of the date first above written.

INVESTOR:                                          BRROWER:

_____                   _____
                                                              By:
                                                              Its:  CEO

3

# Exhibit 4

**LOAN AGREEMENT**

This Loan Agreement ("**Agreement**") is entered into as of August 1st, 2019 ("**Effective Date**"), by and between Gosdom **("Lender")** and Production Capital ("**Production Capital**").

Lender and Production Capital collectively refer to "Parties and "Party" individually.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     <u>**The Loan**</u>.

   a.    <u>Loan Amount</u>. Lender agrees to pay to Production Capital designated bank account at one time a total amount of Six Hundred and Forty Thousand US Dollars ($640,000.00)("**Loan**") on Effective Date.

   b.    <u>Production Capital Bank Account</u>. Production Capital designated bank account:
   Company:  Burgee & Abramoff Client Trust Account
   Bank: Wells Fargo
   Beneficiary: Burgee & Abramoff Client Trust Account
   Account: 1992325652
   Bank Address: 20501 Ventura Boulevard Suite 262, Woodland Hills Ca 91364
   Routing: 121000248
   Swift: WFBIUS6S

2.     <u>**Interest.**</u> Lender will charge Twenty Percent (20%) Interest totaling Six Hundred Forty Thousand US Dollars ($640,000.00) to be paid upon Maturity which shall occur on or before September 20th, 2019 (9/20/19).

3.     <u>**Term and Repayment**</u>. The Loan together with the Interest shall be due and payable in full upon maturity.

4.     <u>**Taxes.**</u> The related taxes and fees in connection with the Loan hereof shall be born by Parties individually according to laws and regulations.

5.     <u>**Jurisdiction and Dispute Resolution**</u>. This Agreement and all actions arising out of or in connection with this Agreement shall be governed and construed in accordance with the laws of Delaware. Any dispute, controversy or claim arising out of, relating to or in connection with this Agreement or the breach, termination or invalidity thereof shall be finally and exclusively settled by arbitration. The place of arbitration will be in Delaware. The arbitration proceedings will be conducted in English.

The arbitration award will be final and binding on the parties, and the parties agree to be bound thereby and to act accordingly.

6.  **Amendment.** Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of Lender and Production Capital. Any amendment or waiver effected in accordance with the foregoing sentence shall be binding upon Lender and Production Capital.

7.  **Effectiveness**. This Agreement shall be effective as of the date first set forth above.

8.  **Events of Default.** Each of the following constitutes an "**Event of Default**" under this note: (i) the Borrower's failure to make any payment when due under the terms of this note, including the final payment due under this note when fully amortized; (ii) the filing of any voluntary or involuntary petition in bankruptcy by or regarding the Borrower or the initiation of any proceeding under bankruptcy or insolvency laws against the Borrower; (iii) an assignment made by the Borrower for the benefit of creditors; or (iv) the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property; or (v) the death of the Borrower.

9.  **Acceleration; Remedies On Default.** If any Event of Default occurs, all principal and other amounts owed under this note will become immediately due and payable without any action by the Holder, the Borrower, or any other person. The Holder, in addition to any rights and remedies available to the Holder under this note, may, in [his][her][its] sole discretion, pursue any legal or equitable remedies available to [him][her][it] under applicable law or in equity.

10. **Entire Agreement**. This Agreement constitute the entire understanding and agreement of the parties with respect to the subject matter of this Agreement, and any and all prior agreements, understanding or representations are hereby terminated and canceled in their entirely and are of no further force or effect. No representation, promise, inducement or statement of intention has been made by any of the parties not embodied in this Agreement, and no party shall be bound by or liable for any alleged representation, promise, inducement or statements of intention not set forth herein.

**IN WITTNESS WHEREOF**, the undersigned have executed this Agreement as of the date first
set forth above.

By: _____

Name:    Vanessa Guo

Title:

**Production Capital**

By: _____

Name:    Kevin Robl

Title:    Manager

3

# Exhibit 5

## LOAN AGREEMENT

This Loan Agreement ("**Agreement**") is entered into as of Sep 23rd, 2019 ("**Effective Date**"), by and between Gosdom **("Lender")** and Production Capital ("**Production Capital**").

Lender and Production Capital collectively refer to "Parties and "Party" individually.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **The Loan**.

    a.  Loan Amount. Lender agrees to pay to Production Capital designated bank account at one time a total amount of Six Hundred and Forty Thousand US Dollars ($560,000.00)("**Loan**") on Effective Date.

    b.  Production Capital Bank Account. Production Capital designated bank account:
        Company: Burgee & Abramoff Client Trust Account
        Bank: Wells Fargo
        Beneficiary: Burgee & Abramoff Client Trust Account
        Account: 1992325652
        Bank Address: 20501 Ventura Boulevard Suite 262, Woodland Hills Ca 91364
        Routing: 121000248
        Swift: WFBIUS6S

2.      **Interest.** Lender will charge Twenty Percent (20%) Interest totaling Five Hundred Sixty Thousand US Dollars ($560,000.00) to be paid upon Maturity which shall occur on or before November 30th, 2019 (11/30/19).

3.      **Term and Repayment**. The Loan together with the Interest shall be due and payable in full upon maturity.

4.      **Taxes.** The related taxes and fees in connection with the Loan hereof shall be born by Parties individually according to laws and regulations.

5.      **Jurisdiction and Dispute Resolution**. This Agreement and all actions arising out of or in connection with this Agreement shall be governed and construed in accordance with the laws of Delaware. Any dispute, controversy or claim arising out of, relating to or in connection with this Agreement or the breach, termination or invalidity thereof shall be finally and exclusively settled by arbitration. The place of arbitration will be in Delaware. The arbitration proceedings will be conducted in English.

The arbitration award will be final and binding on the parties, and the parties agree to be bound thereby and to act accordingly.

6.  **Amendment.** Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of Lender and Production Capital. Any amendment or waiver effected in accordance with the foregoing sentence shall be binding upon Lender and Production Capital.

7.  **Effectiveness**. This Agreement shall be effective as of the date first set forth above.

8.  **Events of Default.** Each of the following constitutes an "**Event of Default**" under this note: (i) the Borrower's failure to make any payment when due under the terms of this note, including the final payment due under this note when fully amortized; (ii) the filing of any voluntary or involuntary petition in bankruptcy by or regarding the Borrower or the initiation of any proceeding under bankruptcy or insolvency laws against the Borrower; (iii) an assignment made by the Borrower for the benefit of creditors; or (iv) the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property; or (v) the death of the Borrower.

9.  **Acceleration; Remedies On Default.** If any Event of Default occurs, all principal and other amounts owed under this note will become immediately due and payable without any action by the Holder, the Borrower, or any other person. The Holder, in addition to any rights and remedies available to the Holder under this note, may, in [his][her][its] sole discretion, pursue any legal or equitable remedies available to [him][her][it] under applicable law or in equity.

10. **Entire Agreement**. This Agreement constitute the entire understanding and agreement of the parties with respect to the subject matter of this Agreement, and any and all prior agreements, understanding or representations are hereby terminated and canceled in their entirely and are of no further force or effect. No representation, promise, inducement or statement of intention has been made by any of the parties not embodied in this Agreement, and no party shall be bound by or liable for any alleged representation, promise, inducement or statements of intention not set forth herein.

**IN WITTNESS WHEREOF**, the undersigned have executed this Agreement as of the date first set forth above.

By: _____

Name:   Vanessa Guo

Title:


**Production Capital**

By: _____

Name:   Kevin Robl

Title:   Manager

3